NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NANCY VEGA,<br><br>  Plaintiff,<br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | Civil Action No.: 12-3382 (CCC)<br><br>**OPINION** |

**CECCHI, District Judge.**

## I.  INTRODUCTION

Nancy Vega ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff disability benefits under the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g). This motion has been decided on the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, the decision of the Administrative Law Judge (the "ALJ") is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

## II.  PROCEDURAL HISTORY

### A.  Procedural Background

Plaintiff applied for disability insurance benefits ("DIB") from the Social Security

---

[1] The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. Of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

Administration ("SSA") on September 11, 2007. (R.146.)[2] Plaintiff alleged disability beginning on October 23, 2006. (R.137.) Plaintiff claimed that three conditions—herniated discs, osteoarthritis, and low hemoglobin—limited her ability to work. (R.151.) Plaintiff's claim was denied initially on January 3, 2008, and denied upon reconsideration on February 18, 2009. (R.74-76.) The ALJ held a hearing in this matter on June 4, 2010. (R.52.) In a written opinion dated July 15, 2010, the ALJ determined the Plaintiff was not disabled. (R.32-44.) The Appeals Council denied review on April 16, 2012, rendering the ALJ's decision the final judgment of the Commissioner. (R.1-8.) Plaintiff timely filed this action.

B. **Personal and Employment Background**

Plaintiff has a high school degree and completed two years of college, ending in 1987. (R.156.) Plaintiff alleges that she became disabled on October 23, 2006, at which time she was forty years old. (R. 137.) She further alleges and that she left her career as a packing operator, which she had held for over a decade, due to this disability. (R.151-152.)

Plaintiff's past employment involved operating machines that performed various packaging functions, making minor adjustments or repairs, and inspecting the finished products of the packaging. (R.152.) This job required her to spend three hours per day walking, sitting, or stooping, and five hours per day standing. (Id.) During her employment, she states that she was capable of lifting sixty pounds, and frequently lifted twenty-five pounds. (R.153.)

C. **Medical Background**

In June 2007, x-rays taken of Plaintiff's knees revealed early osteoarthritis and early degenerative disc disease at the L5-S1 level. (R.300.) In October 2007, Plaintiff was examined by Dr. Irizarry-Rodriguez. (R.241-243.) His report stated that Plaintiff had polyarthritis of the hands,

---

[2] "R." refers to the administrative record of proceedings received from the Social Security Administration, Docket Entry No. 4.

2

shoulders, neck, back, hips, knees, ankles and feet. (R.241.) The report states that Plaintiff was experiencing pain, fatigue, and malaise. (Id.) It further states that Plaintiff experienced difficulty grasping and pinching. (R.242.) Dr. Irizarry-Rodriguez also reported that Plaintiff had limitations in sitting, standing, and walking. (Id.) Dr. Irizarry-Rodriguez diagnosed Plaintiff with generalized osteoarthritis, generalized fibromyalgia, and anemia. (R.243.)

Another report by Dr. Irizarry-Rodriguez in 2008 stated that he was treating Plaintiff monthly, and added anxiety, depression, and chronic fatigue syndrome ("CFS") with fibromyalgia to the list of diagnoses. (R.279.) He reported that Plaintiff was able to lift and carry ten pounds occasionally (defined as up to one-third of the day), stand and/or walk less than two hours per day, and sit less than six hours per day. (R.283.) Finally, he reported that Plaintiff's ability to push and pull was limited in the upper extremities. (R.284.) The measurements of Plaintiff's range of motion taken by Dr. Irizarry-Rodriguez show limitations in many areas. (R.285-286.)

In November 2007, Plaintiff underwent a consultative neurological evaluation by Dr. Zaida Boria. (R.245.) Dr. Boria's report noted that Plaintiff had normal muscle tone, and that she could pinch, grasp, and write. (R.247.) Dr. Boria determined that the Plaintiff had lumbar pain with moderate restrictions in range of motion, normal reflexes and sensorial exploration correlating with musculoskeletal pain. (R.248.) She could sit, stand, walk, travel, and handle and lift common objects. (Id.) The measurements of Plaintiff's range of motion taken by Dr. Boria were normal. (R.251-252.) Dr. Boria's diagnostic impression was that Plaintiff had lumbar musculoskeletal pain and osteoarthritis in her hands. (R.248.)

In January 2008, physician Vincente Sanchez reviewed Dr. Irizarry-Rodriguez and Dr. Boria's evaluations and concluded that Plaintiff was capable of lifting and carrying 50 pounds occasionally and twenty-five pounds frequently. (R.256-257) He found that Plaintiff could stand

3

and/or walk about six hours in an eight hour work-day, and sit for six hours as well. (Id.) Dr. Sanchez concluded that Plaintiff's ability to push and pull was unrestricted, and that she was able to frequently climb, balance, stoop, kneel, crouch, and crawl. (Id.)

In February 2008, the Plaintiff received an MRI of her lumbar spine at the same facility that had taken her x-ray in June 2007. (Compare, R.275 with R.300.) Dr. Mateo, a Radiologist examined the results and compared them to the June 2007 x-ray. Dr. Mateo concluded that the L5-S1 intervertebral disk narrowing was "slightly decreased," and noted "no degenerative changes." (R.275.) Dr. Mateo concluded that Plaintiff's condition "may sometimes be seen as a normal variant." (Id.)

Plaintiff received a consultative examination from Dr. Marc Weber in February 2009. (R.310.) Dr. Weber notes that Plaintiff presented with pain in the neck, back, shoulders, and hands, and that she stated that her pain worsens in her back when she lies flat. (Id.) During her physical examination, Dr. Weber found that Plaintiff was in "no apparent distress" and appeared comfortable. (R.311.) Dr. Weber indicated tenderness upon palpation of the mid lumbar interspinous region and both trapezius muscles, and upon palpation of the mid lumbar interspinous regions and paraspinal muscles. Further, Dr. Weber found no tenderness upon palpation of the shoulders or fingers, but found tenderness upon palpation of the elbows and knees. (Id.) Dr. Weber noted no swelling. (Id.) Dr. Weber rated muscle strength as full in the upper and lower extremities. (Id.) Dr. Weber found that Plaintiff was able to fully extend her hands, make fists, and oppose her fingers. (Id.) He further noted that she was able to manipulate objects, stand on her heels and toes, but that she was not able to perform a squat. (Id.) Dr. Weber reported that Plaintiff was able to ascend and descend the examination table, as well as put on and take off her shoes without assistance. (Id.) Dr. Weber's diagnostic impression was that Plaintiff suffered from

4

generalized osteoarthritis. (Id.)

Plaintiff was examined by Dr. Tiku in April 2009. (R.367.) Dr. Tiku noted that plaintiff complained of hip and knee pain, stiffness of the hand, and cervical spine pain. Dr. Tiku reported that Plaintiff reported ten minutes of stiffness in the morning, and that she reported being able to walk without pain for thirty minutes. (Id.) Upon examination, Dr. Tiku noted that other than her anemia, Plaintiff had no abnormal physical signs. (Id.) Dr. Tiku's musculoskeletal examination revealed that Plaintiff had a tender Heberden's node at the second DIP joint, pain in her hip joints and some swelling of the left knee and crepitation in the right. (Id.) Dr. Tiku also reviewed lab tests and x-rays provided by Plaintiff, and stated that they were all within normal limits. (R. 368.)

### III. LEGAL STANDARDS

#### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court is not "permitted to re-weigh the evidence or impose their own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. §405(g). Because conclusory statements are "beyond meaningful judicial review" a district court should remand if the ALJ does not set forth the reasons for his decision. Thomas v. Comm'r of the Soc. Sec. Admin., 625 F.3d 789, 800 (3d Cir. 2010) (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000)). Therefore, in the absence of reasoning from the ALJ, it would be error for this Court to undertake its own independent analysis of the relevant evidence in the record. Fargnoli v Massanari, 247 F.3d 34, 43 n.7 (3d Cir. 2001) ("the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (quoting SEC v. Chenery Corporation, 318 U.S. 80, 87 (1943)).

This Court must "scrutinize the record as a whole to determine whether the conclusions

5

reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is "more than a mere scintilla," and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In other words, this Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

**B.    Determining Disability**

Under the statute, before obtaining DIB a claimant must demonstrate that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The statute requires that disability will be evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy, taking into account the claimant's age, education, and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The SSA follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520. First, the ALJ must determine whether the claimant is currently engaged in gainful activity. Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Second, if she is not, the ALJ determines whether the claimant has an impairment that limits her ability to work. Id. Third, if she does, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), which would result in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of her impairment, and, fourth, must consider whether that RFC is enough to perform the claimant's past relevant work. Id. at 262-263. Fifth, if her RFC is not enough, the

ALJ must determine whether there is other work in the national economy that the claimant can perform. Id. at 263.

The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Id. Neither party bears the burden at step three. Id. at 263, n.2.

IV.  **DISCUSSION**

After reviewing all of the evidence in the record, the ALJ determined that Plaintiff was not disabled and denied her claim for DIB. (R.44.) The ALJ arrived at his decision by following the required five-step analysis. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 23, 2006, the alleged onset date of her disability. (R.40.) At step two, the ALJ determined that the Plaintiff suffered from three severe impairments: "osteoarthritis, fibromyalgia, and anemia." (Id.) At step three, the ALJ determined that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one found in the Listings. (Id.) The ALJ then determined that the Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except that she can occasionally kneel, crouch and crawl. (R.41-43.) At step four, the ALJ determined that the Platintiff was unable to perform her past relevant work. (R.43.) At step five, the ALJ determined that there were other jobs in the national economy that Plaintiff could perform, considering her age, education, work experience, and RFC. (R.44.)

Plaintiff asserts that the ALJ's decision should be reversed because of a general error in the ALJ's analysis, as well as particular errors in the ALJ's determination of Plaintiff's RFC and the ALJ's step-five analysis. Plaintiff's complaint of general error is that the ALJ failed to properly consider all the medical evidence, including evidence of anemia, CFS, and depression (Pl. Mot. at

7

7-11). With respect to the RFC determination, Plaintiff alleges that (1) that the ALJ failed to properly weigh the treating physician's opinions in making his determination (Id. at 12-15); (2) that the ALJ failed to properly credit the Plaintiff's subjective complaints of pain (Id. at 8-10; 13); and (3) that the RFC determination was not supported by the record (Id. at 15-17). With respect to the ALJ's step-five analysis, Plaintiff contends that a vocational expert was required. Id. at 17.

This Court finds that the ALJ failed to make reviewable findings regarding Plaintiff's CFS and depression. Additionally, the ALJ failed to make reviewable findings regarding Plaintiff's subjective complaints of pain. Therefore the Court affirms in part and vacates in part. This case will be remanded with instructions to reopen the record on these issues and to render a new ruling after the parties have been heard.

### A. The ALJ Failed to Discuss The Alleged Psychiatric Impairments and CFS

Although the ALJ's summary of the medical evidence in the record is accurate and thorough he does not set forth the reasons for his decision regarding certain findings. This prevents meaningful review. Thomas, 625 F.3d at 800. Where there is conflicting probative evidence in the record, the Third Circuit recognizes "a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions." Fargnoli v. Halter, 247 F.3d at 42. Here, the Court cannot determine the underlying reasons for the ALJ's conclusions regarding the alleged psychiatric impairments and alleged CFS.

With respect to the alleged psychiatric impairments, although the ALJ recognizes the diagnosis of depression and anxiety (R.42, 70), the ALJ's decision does not address whether or why he rejected these diagnoses. "The ALJ's failure to explain his implicit rejection . . . was error." Fargnoli, 247 F.3d at 44 (quoting Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981)). Without such an explanation, this Court cannot meaningfully review the ALJ's decision regarding the alleged mental impairments. Thomas, 625 F.3d at 800. Even if, as Defendant argues, the ALJ

8

determined that the diagnosis of these mental impairments were not verifiable or credible, he did not set forth his reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 432-33 (3d Cir. 1999) (citing 20 C.F.R. 404.1520a).

Further, the alleged CFS was not discussed in the ALJ's decision apart from a statement that Dr. Irizarry-Rodriguez made a diagnosis of "chronic fatigue syndrome with fibromyalgia." On the ALJ's written opinion, this Court cannot determine whether the ALJ considered chronic fatigue syndrome along with fibromyalgia, or merely disregarded the diagnosis. The Defendant argues that there is "a considerable overlap of symptoms between CFS and fibromyalgia." Pl. Opp. at 10 n.3. Nevertheless, the decision did not explain whether or why the ALJ credited Dr. Irizarry-Rodriguez's fibromyalgia diagnosis but not his diagnosis of CFS. Thus, without clarity regarding the ALJ's consideration of the CFS diagnosis or other evidence, this Court cannot meaningfully review the ALJ's decision. Cotter, 642 F.2d at 705.

### B. The ALJ Failed to Properly Evaluate Plaintiff's Credibility

SSR 96-7 requires that when providing a credibility determination an ALJ must "give specific reasons for the weight given to the individual's statements." See also, Breslin v. Comm'r of Soc. Sec., 509 Fed. Appx. 149, 153 (3d Cir. 2013).

Here, the ALJ's credibility determination is as follows: "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R.43.) This statement is conclusory, and gives no specific reason for the weight given to Plaintiff's statements. Thus, it does not comply with SSR 96-7 and does not render the ALJ's determination amenable to meaningful review.

### C. The ALJ Properly Evaluated Medical Evidence of Anemia

Plaintiff contends that the ALJ committed reversible error by not properly evaluating

9

Plaintiff's anemia. The ALJ's decision in this regard is supported by substantial evidence. The ALJ explicitly discussed the anemia and its symptoms in his step 3 and RFC analysis, and made a determination that Plaintiff's anemia and other symptoms limited her to sedentary work. (R. 40-42). In particular, after finding anemia a severe impairment, the ALJ noted that there were no records of blood transfusions or other evidence meeting the criteria for Listing 7.02. Further, in making his determination of Plaintiff's RFC the ALJ specifically considered the diagnoses of anemia (R.41), and mild anemia (R.42). This Court's review of the record finds no evidence that Plaintiff's anemia more seriously impacted her work, and Plaintiff points at none. Thus, the ALJ's determination is supported by substantial evidence.

### D. Plaintiff's Other Contentions

Plaintiff's remaining contentions regarding the RFC and step five depend on the resolution of the errors discussed above.

However, the Court notes that with respect to the ALJ's rejection of Dr. Irizarry-Rodriguez's opinions, the ALJ's credibility determination may provide an articulated basis for discounting some of those opinions but not others. For example, the ALJ properly supports his discounting of Dr. Irizarry-Rodriguez's opinion regarding disc disease in that another physician's opinion discussed by the ALJ was deemed more trustworthy. Upon reviewing the February 2008 MRI of the lumbar spine, Dr. Mateo concluded that Plaintiff's L5-S1 condition diagnosed as "disc disease" by Dr. Irizarry-Rodriguez "may sometimes be seen as a normal variant." (R.275.) As another example, the measurements of Plaintiff's range of motion taken by Dr. Irizarry-Rodriguez that show limited range of motion (R.285-286) are directly contradicted by Dr. Boria's measurements (R.251-252). Thus, the rejection of Dr. Irizarry-Rodriguez's opinions on these issues was supported by substantial evidence.

That said, the decision does not provide an articulated basis for rejecting Dr. Irizarry-

Rodriguez's opinions regarding psychiatric impairments and CFS. See, supra section IV.A and IV.B. For example, despite Defendant's argument that there is "a considerable overlap of symptoms between CFS and fibromyalgia" (Pl. Opp. at 10 n.3) the decision did not indicate why the ALJ appears to credit Dr. Irizarry-Rodriguez's opinion on fibromyalgia, but not CFS. On remand, the ALJ should set forth in the record which opinions of Dr. Irizarry-Rodriguez he credits, and which he does not.

## V. CONCLUSION

For the foregoing reasons, the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is hereby affirmed in part, vacated in part, and is remanded for further proceedings consistent with this Opinion. An appropriate order accompanies this Opinion.

DATED: November 26, 2013

_____
**CLAIRE C. CECCHI, U.S.D.J.**